13-5-221 Gaylus Bailey v. Real Time Staffing Services Oral Argument not to exceed 15 minutes per side. Mr. Gilbert for the Plaintiff. Good morning. May it please the Court. I'm Justin Gilbert from Jackson, Tennessee, and I'd like to reserve 4 minutes for rebuttal, please. Your Honor, my client has HIV, and like thousands of other people around the country, he takes a drug, brand name Atripla, for the purpose of slowing that down. That drug does have a side effect. It's a powerful drug, and one of those side effects is that when one takes a urine drug screen, it can show a false positive for marijuana. That's what happened in this case. In March of 2011, his drug screen did come back positive for marijuana, and he did 4 things that are factually relevant to this case. Within 2 hours, he brought in a medical note from his doctor's office saying that he has a prescription medication that can cause a false positive. He put that in the hand of Human Resources, and he specifically told Human Resources, I have a medical impairment. But that letter didn't identify the prescription or the nature of the impairment, is that right? That is correct. He didn't tell him he had a disability. He didn't use the word disability, and he did not use the word HIV. Did he tell him anything whatsoever about the nature of any disability? He did not, being that it was HIV, which is stigma. How was the defendant to know that he had a disability? I mean, he could have been taking any kind of drug from Tylenol to, you know, whatever. How would the company know that he was claiming to have a disability if they never told him, if he never told them? Two answers to that, Your Honor. One legal, one factual. Legally, under the new law, disability is defined as impairment under Section C, which is the third prong. I've had a number of ADA cases, and I think district judges find this confusing, that the third prong retains the name regarded as, but is actually both regarded as and impairment, an actual impairment. So when Your Honor asked me, how do they know he has a disability? The correct legal question is, did they know he had a medical impairment? I mean, you can have all kinds of impairments without having a disability. You can. And so the way the drafters wrote the new law is to say that an impairment is the definition of disability, unless the defendant proves that it is both transitory and minor, and then it would fall outside of coverage. But if one has an impairment. If the defendant has to prove that, that would virtually negate the ability to administer, or at least the effectiveness of the drug test, because then the defendant in some instances would have to launch an investigation into the medical condition of the employee. In other words, the company couldn't have an across-the-board drug test that it enforces. It would have to, the burden then would be on the employee, the employer, to prove whether the employee came within the exception. Is that really required by the law? I think the analysis would be if the employee brings him down and says, I have a medical impairment that caused this, and he seeks to interact with the employer about that impairment, and the employer says, take it up with our medical review officer because they analyzed this. And the employee, interacting in good faith, much like a reasonable accommodation interaction, attempts to do that, and the medical review officer will not speak to him, and in fact says that the employee declined to speak. Well, none of that happened here. My problem with your case is similar to Judge Clay's problem. At least an employee needs to make it relatively clear to the employer that he's claiming or she's claiming a disability, not, you know, I fell down yesterday and hurt my knee, or it needs to be somewhat explicit for the employer to know and to be put on notice that this employee has got a disability or something that would be regarded as a disability. And that never happened in this case. Well, it actually did, Your Honor. The note was given to human resources that says an impairment, and human resources at that point said, we won't interact with that, take it to the medical review officer. And so my client tried to do that because that is the avenue where those confidential communications like you're talking about would occur, about I have HIV, here's the nature of my disability, here's what I take, those confidential sort of things. That's the way the system is set up. But my client was shut out from those conversations, no fault of his own. And so in this case, he does what the employer is telling him to do. And frankly, I think he did it correctly. People that have HIV are rightly going to be concerned about how to communicate that. And so he goes to human resources with them. Well, can you have, is an employer supposed to know that the employee has HIV without the employee telling the employer that he's got HIV? I mean, you know, I just don't get it. Under Section C, it's not the diagnosis that the employer must know. It says an impairment. And Mr. Bailey says, I have an impairment that caused this false positive. And human resources said, stop. Go further in your interactive process with the medical review officer. Who says that now? The human resources manager tells him to do that. In fact, the human resources officer says, within 72 hours, you will have that conversation. So Mr. Bailey waits. The medical review officer doesn't call him. So he makes the call himself. Tries to get through the medical review officer, cannot get through. And two days later, he is let go. Now, the medical review officer apparently called the employer and said, he never told us anything about a prescription medication. And the employer said, well, wait a minute. He's got two notes here from a doctor. He was trying to call you. What happened here? And apparently the medical review officer just said he didn't discuss that with us. Who is the medical review officer? The medical review officer is a guy named Philip Green. Is he independent of the company or an employee of the company or what? He works for a company that was employed by Mr. Bailey's employer. Mr. Bailey worked as a temporary employee, placed at a company called Sargent's. Sargent's hired this medical, this drug testing company. When is the first time your client brought to the attention of the company that he had HIV or when was that? The word HIV was not mentioned to the company. Within two hours of the drug test coming back positive, he brought in the HIPAA compliant note from his physician. And that's when he was directed. Well, that just said it was a false positive. It didn't say anything about a disability, right? It said he takes a prescription medication that can cause a false positive. And my client said, I have a medical impairment which caused this. Impairment being the key words under the new act. At that point, Human Resources said, you need to take it up with the medical review. So the supposition you're saying of the new law is that anybody who has an impairment, quote, has a disability. Anyone who has an impairment that is not transitory and minor has a disability under Section C. Yes, Your Honor. Yes, that is the new law. If you're not seeking a reasonable accommodation, then this law protects people with impairments that are not transitory and minor. So we're expanding the idea of a disability to any impairment. Yes. That is one of the purposes of the ADA, to expand this and to make the move towards causation, not coverage. Now, granted, not every sniffle that's an impairment is a disability. That's why the transitory and minor exception exists. If you turn your ankle, you've got an impairment, right? Yes, you would. So that would be a disability for purposes of the statute. Conceivably, it could be if it were not transitory and minor and the focus would move to causation. But in this case, there's no question that HIV is an impairment and it's not transitory. Yeah, but you've got to tell somebody what it is. You can't just – the employer can't read his mind. Right, but the employer is bound by what their own medical review officers failed to do. That is their agent, and they cannot contract away that liability. But he fails the drug test. There's no allegation that the drug test is discriminatory or that there was not a policy of drug testing. There's nothing like that. He simply fails it. Then he comes in and says, I have an impairment and, you know, I'm taking a prescription. But he doesn't put anything – the employer doesn't receive anything authoritative in writing about the nature of the impairment. All they know is that he failed the drug test and he says he's on medication. That's not enough to require the employer to have to do anything, is it? But why is it they didn't receive it? Because the employer and its MRO failed to interact with him. He did everything he could to get this information to the MRO. Wait, wait, wait. Now, he got a note, a couple of notes from doctors. Correct. What is wrong with a doctor saying in the letter his disability is HIV? Just after I see my time is up, may I answer that question, Your Honor? Please. I think HIPAA prevents doctors from disclosing the diagnosis, and so they're probably hesitant to do that. And when more information was needed, he intended to give that through the MRO process because the letter said if you need more information, please call our office. Mr. Gilbert, if you went to your doctor and said, doctor, I need something for work, I need you to tell them that I have pneumonia or I had pneumonia, are you saying to me that the doctor couldn't accommodate your request and put that in a letter that you could take to your employer? I'm not saying that couldn't happen, Your Honor, but in this case I think it's probably normal, at least understandable, that the doctor would write the note as it was written and then say in there, please call me for more information. And that's what the note did say. He couldn't put it in a letter, but he could respond to the medical resource officer's phone call. Right. Is that what you're saying? Yes, I think that's a reasonable attempt to interact about this, particularly when it's a very stigmatic condition like HIV. It's difficult to know how to communicate about that, and the effort to say in two letters, please call me, and then to interact with the MRO I think is probably what an employee should do, Your Honor. Thank you, Your Honor. Good morning, Your Honors. I'm Gene Hayes from Memphis, Tennessee. I represent the defendant, select staffing in this case. May it please the Court. This case is not about Mr. Bailey's HIV. It's undisputed that the company didn't know he had HIV. It's undisputed that the medical review officer didn't know he had HIV. He failed a drug test. But his main argument, which he... I'm sorry? His counsel's main argument, which you need to respond to, is premised on this amendment to the Disability Act, which is this new prong three, and it does say the term disability means with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities, and then says under the new prong three, an individual meets the requirement of, quote, being regarded as having such an impairment, end quote, if the individual establishes that he or she has been subject to an action prohibited under this act because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity. And that is exactly my point, Your Honor. It's not about his HIV because it doesn't matter how severe or not severe the impairment is, but they have to know that there's an impairment. The notes that Select received, assuming that they saw them and understood them, say he's on a prescription medication. There's prescription medications for all kinds of things that aren't disabilities. You could have a sinus infection that's three or four days long. But the word impairment, he says, and that's correct, is what is used in the statute. Yes, I agree with that. And, again, I don't think that there's any evidence at all that Select knew that he had any kind of impairment. I mean, again, you know, the... What about the note he brought in after he failed a drug test? Did that impose any duty on the employer to look into the matter? Well, I think the duty is, and as a practical matter, like Your Honor pointed out in Plaintiff's argument, there's a protocol on drug testing, and there's no argument that they're not allowed to drug test or that the drug test is discriminatory or anything like that. There's a protocol to drug testing. You fail the drug test if you have a prescription that you think interfered with the drug test, and these folks were told that both at the testing site and he was told that, you know, these notes. The employer is not in a position to understand those notes, to make a determination whether these notes are accurate or not, so they send them to the medical review officer. And the truth is, in this case, Mr. Bailey admitted that he talked to somebody at the medical review office. Now, it wasn't somebody that he thought he should tell that he had HIV to. He either didn't remember or didn't know what prescription he was on, and so when the medical review office communicates back to select staffing, to the defendant in this case, well, he didn't tell us. He didn't interact with us. He didn't tell us what he was on. And again, there's no way for those folks to read any minds and say, okay, there is something here that we need to look into further. Furthermore, again, he's not asked for an accommodation. Now, if he'd asked for an accommodation, I think maybe there's an argument that there needs to be a medical inquiry and an individualized assessment or something like that. But that didn't happen in this case. Well, the accommodation he asked for is to be excused from the requirement of the drug test. Which I would say, A, is not reasonable, and, B, they don't have to give him the accommodation that they asked for, assuming that he's asked for one. The accommodation that's reasonable is to work through the medical review officer who has the expertise to understand whether whatever prescription he's on actually does cause a false positive on the drug test. And he didn't do that. This guy was a forklift driver. Okay?  And how we should interpret it. The word impairment seems to be the word that needs to be construed, interpreted. And you could infer from what happened here that he, quote, had an impairment, both from the note and what he said to the people when he delivered the note, that he had, you could infer that he has an impairment. And the way this is worded, it says, individual meets the requirement of being regarded as having an impairment. The individual establishes that he or she has been subject to an action prohibited under this act because of an actual or perceived physical or mental impairment. Then it says, and this is, I don't understand exactly what it means, but whether or not the impairment limits or is perceived to limit a major life activity. In other words, it seems if you've got an impairment, you've created a presumption. Let's just say for the moment you could infer that he had some kind of impairment. You don't know what kind. But the doctor says what he says. And he says, you know, got an impairment, according to counsel. It seems like that creates a presumption that you've got a disability and that the deferred employer then has got to come forward and show that it is not a disability. You follow what I mean? I do. Is that the right way to interpret it or what? I think if it's interpreted that way, the problem is it completely guts any opportunity for an employer, especially an employer, for example, like Sargent's where Mr. Bailey was assigned, that has a warehouse where people are driving forklifts where they want to do some of this drug testing so that they can keep the workplace safe. I think it guts their ability to do that because anybody can come up and say, hey, I'm sorry, I might fail my drug test. No, by the way, if I do, I'm impaired. And so then we have to go through medical inquiry and do an individualized assessment in every single case. I don't think that Congress meant to make that happen in every case where somebody claims, hey, I might be impaired. Now, in this case, again, what is the defendant required to do in this situation? And I think the answer is exactly what they did. There is a protocol. There's a drug testing protocol. We have a medical review officer engage with that person, tell them what you've got to tell them, and then they will notify us whether this is. But he says the medical review officer and the company should have at least called him and asked him what his problem is. He talked to somebody at the medical review office. It's not like he didn't have the opportunity to communicate with somebody at the medical review office. It was just not somebody that he thought he ought to tell. He said he thought it was a secretary or somebody who just basically answered the phone. But they asked him what his prescription was, and he couldn't remember what it was. So he had the opportunity to engage with this. If he tells anybody, hey, I've got HIV, if he tells the medical review office, hey, I've got a prescription for this, they take that into consideration when they interpret the drug test. Now, the problem with that, of course, is that the test is confirmed positive, and so there really wasn't a false positive. It really was marijuana. But, again, I think the problem with it, if we construe the statute that way, and if we construe it the way that the plaintiff has encouraged us to do, what we end up with is a system where if somebody is impaired plus an adverse action, an adverse action occurs to them, then they have a prima facie case of disability discrimination. And even though the act was amended, it did not change the fact that you've still got to prove causation. You've got to prove somewhere that the disability or impairment in this case caused the adverse action. And there's no causation here. There's no proof of causation. It's undisputed that the employer never knew he had HIV. It's also undisputed that the medical review office didn't know he had HIV. He had the opportunity to tell them. He didn't do it. I may have missed it in the record, but is there any indication that whatever medication the plaintiff was on would indeed cause a false positive? Yes, I think there is. I think there is. That the Altraperfavorens could cause a false positive. It could. But again, the defendant didn't know that. Not qualified to know that. You're talking about an HR guy, an HR person who has no experience and no expertise in this kind of matter. But his doctor told the employer that's what happened to him. His doctor told the employer that he was on a prescription medication. His doctor wrote a note that Mr. Bailey was on a prescription medication that could cause a false positive. That's all he wrote. And that's a big leap from he's on a prescription medication that causes a false positive to he's disabled. Just to embellish the record, he fails the drug test. When was he terminated effective thereafter? The record is unclear on that. Nobody could remember, both the human resources representative and Mr. Bailey, nobody could remember. But it was a couple days after he's told to go to the medical review officer and to disclose his prescriptions. Or give his notes to the medical review officer. Okay, just to clarify the record, in terms of what the employer knew and when did they know it, he fails the drug test the same day he brings this note back to the company that didn't really say a whole lot. And he leaves that with, I don't know, a secretary or somebody. I presume that note made its way to the human resources or the medical director. Somehow the company did receive and look at that communication. The first note, and the first note only says that he's under a doctor's care and he's taking prescription medication. That's all the first note says. He comes back. Go ahead, Your Honor. I'm sorry, I didn't want to interrupt you. I thought you were done. He comes back because Ms. Franklin, the human resources officer, wasn't there when he came the first time. He comes back with a new note. And Ms. Franklin says, here's your original note. I can't take your notes. I'm not qualified to interpret these notes. We have a medical review officer engage with him. And then it was a couple days later after that when there's no response from the medical review officer or when the medical review officer contacts and says we've not heard from him, that's when ultimately he was terminated. Well, subsequently there were a couple of other doctor's notes that he got to the company, and there was this affidavit from the physician in North Carolina. And when did those things come in? And did those go to the decision maker or the HR people? What happened? What was the sequence of events there? All of that, all of the declarations and all that, happened during the litigation. So the operative facts for the decision maker was I knew he had a note. I knew he failed the drug test. The MRO said we have no other information but that he failed the drug test. That's what they had to base their decision. And, again, I think it's a reasonable expectation for employers. To do more, again, means that we're going to have every time somebody has a drug test and they say, well, you know, I didn't do it or I've got an impairment or I had a cold that day or something like that, then the employer is going to have to in every single case do some sort of, if we accept what's being encouraged here, in every case we're going to have to do that. And so if we've got 100 people that we drug test and 50 of them say, you know, I'm on medication, then we're going to have to do more than we've done, which is what the drug testing protocol is. Okay, let me ask you this. When or what date did the employer find out that the employee was claiming that he had HIV? During the litigation. After the filing of the lawsuit? Yes. Okay. Yes. All right. Yes. That's correct. I've got five seconds. May I sum up? Sure. It's undisputed that the defendant didn't know he had HIV. The case is not about the stereotypes and the fears about HIV because they didn't know about it. They knew he failed the drug test. That's why they tried. Thank you for your attention. Thank you. I'd like to make a distinction between coverage and causation. The first prong, disability coverage, is simply shown by having an impairment. HIV is an impairment. That's different as to causation, as to whether the employer knew or should have known. Is the employer charged with the responsibility of knowing of the impairment before the nature of the impairment is communicated? Your opposing counsel says they didn't know about this HIV condition until the litigation. Your question earlier hit the nail on the head when you said, what is the employer's duty? The standard is not what they actually knew. It's what they knew or should have known. And in this case, they've got two notes, and when he brings the second one in, which was March 15th, by the way, he seeks to communicate with Human Resources. Human Resources sends him to the medical review officer. The medical review officer never speaks to him. This is the first note that he brought in. Is that it? Let me clear up the timing. Fails the test March 11th. Within two hours on March 11th, he brings the first note. March 15th, he brings the second note. He's terminated March 17th. When he brings that second note on March 15th, the one that says, Mr. Bailey is a patient at my clinic. He takes a prescribed medication for an impairment. If you have any more questions, call me because this can cause a false positive on a urine drug screen. That's what it says. When he brings that second note and puts it in the hand of Human Resources, they send him to their MRO. So to answer your question, when it comes to duty, the question is not what they actually knew. It's what they knew or should have known. And how would you characterize the causation question? You're saying, as I understand it, that there is a causation problem here that the district court missed, so to speak, right? Correct, Your Honor. How would you characterize that causation? What would you define? If we were to send this case back to the district court for reconsideration, causation is normally a question of fact. Right. And it would normally go to the fact finder, right? Correct. So how would we characterize the causation problem that is to be put to the fact finder? You would characterize it as there is a factual issue on this record over who failed to interact and whether the employer knew or should have known of the impairment. Clearly, that is what happened. The employer's MRO refused to interact. You have to raise the impairment. The claimant has to raise the impairment. Right. But then it appears that that creates a kind of presumption and that the employer then has got a duty to come forward and look into what the impairment is. I mean, at least that's the way it seems to be worded in the statute. I think that's right. And you have to have some history of the problem with the ADA that resulted in the change. Ninety-nine percent of the time, according to the American Bar Association, plaintiffs could not win under the ADA. So they purposefully made coverage more lenient to shift it to causation so that the employer and the employee would interact. And so if you reach causation and you remand it, that's where the jury needs to say, hey, who messed up in this interaction? The guy's bringing in two notes, he's putting it in the human resource manager's hand, and the MRO won't talk to him and then fills out a sheet falsely saying that he would not speak to them. And so that's the issue the jury needs to figure out. Who failed on causation to interact? We submit. Yes, Your Honor. Under your view of the law as it now is, who ultimately makes a decision as to whether an employee is impaired or not? Ultimately, the employee's impairment must be assessed on an objective standard as to not be transitory or minor. HIV is neither of those, so coverage is met and the case moves to causation. And who failed to interact? I don't know whether you answered my question. Is it the medical resource officer or is it the company that makes the ultimate decision? This guy stays or he goes? In this case, it would not be appropriate to separate the company from the medical review officer because they employ the medical review officer, and the law says that a company cannot contract away its liability to other third-party doctors. So when you look at the interactive process, the medical review officer and the company with whom Mr. Bailey is trying to interact are one and the same, Your Honor. Thank you. Thank you very much. Case is submitted.